```
_____ FILED
_____ LODGED     MAIL
_____ RECEIVED
```

MAY 25 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                               DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

CASE NO.: 22-CV-00642

MYRIAM ZAYAS,

PLAINTIFF,

v.

official and
ROSS HUNTER (individual capacity), official and
ROBERT FERGUSON (individual capacity),
ANITA KHANDELWAL (individual capacity),
official and

DEFENDANT(S).

42 U.S.C. § 1983 DEPRIVATION OF
RIGHTS-EQUAL PROTECTION-DUE
PROCESS- INJUNCTIVE RELIEF

Comes now Plaintiff Myriam Zayas and for her cause of action states:

# I.   JURISDICTION

1.      This court has jurisdiction of this matter by virtue of 28 U.S.C. Sections 1331 and 1343. This action is authorized by 42 U.S.C. § 1983 in the constitution of the United States, to redress deprivations of constitutionally protected rights and interests under color of state law. This court has jurisdiction over Article III of the constitution, and the common laws and statutes of the State Washington. This court has jurisdiction over 28 U.S. Code § 1332, § 1333, § 1338, and § 1349. This court has supplemental jurisdiction over 28 U.S. Code § 1367.

2.      Venue is proper in this Court at the Seattle Federal District Court, under 28 U.S. Code § 1391(b) because the defendants are residents of Pierce County Washington.

3.      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the local rules for the Western District Court of Seattle, Plaintiff demands a trial by jury for all issues pleaded herein so triable. The Seventh Amendment extends the right to a jury trial to federal civil cases.

4.      This is also an equitable action for declaratory relief under 28 U.S.C. 2201 and 2202, and Rules 57 and 58 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. Rules 57, 58), for the purpose of declaring defendants' actions unconstitutional.

## II.   PARTIES

5.     Plaintiff Myriam Zayas (hereinafter "Plaintiff") an individual person resides in the city of Kent, County of King, state of Washington. She is the mother of an 8 month old child who resides with Plaintiff, a 2 year old child Plaintiff gave up for adoption at birth to avoid placement in foster care, a 7 year old child who has been in a foster home for 26 months, a 19 year old child who was removed by CPS[1] at age 6 and now resides with Plaintiff, a 22 year old child who was removed by CPS at age 8 adopted by strangers who moved her to Texas, and a 21 year old child Plaintiff gave up for adoption at birth to avoid placement in foster care.

6.     Defendant ROSS HUNTER (hereinafter "Defendant No.1" "department") an individual person is a resident of King County in the state of Washington, Defendant No.1 is and was at all times mentioned herein, the Director at the Children's Administration, Department of Children Youth and Families (formerly DSHS[2])when the events giving rise to this complaint occurred, he is sued in his individual capacity within the meaning of 42 U.S.C. § 1983. (and official capacity)

7.     Defendant ROBERT FERGUSON (hereinafter "Defendant No.2" "AG") an individual person is a resident of Thurston County in the state of Washington, Defendant No.2 is and was at all times mentioned herein, the Attorney General for the state of Washington, in charge of all Assistant Attorney Generals, who are at all times relevant to this complaint the states attorney defending the  Department of Children Youth and Families (formerly DSHS[3])when the events giving rise to this complaint occurred, he is sued in his individual capacity within the meaning of 42 U.S.C. § 1983.  (and official capacity)

8.     Defendant ANITA KHANDELWAL (hereinafter "Defendant No.3") an individual person is a resident of King County in the state of Washington, Defendant No.3 is and was at all times mentioned herein from 2020-present, the Director at the Department of  Public Defense (SCRAP) of King County, when the events giving rise to this complaint occurred, she is sued in her individual capacity within the meaning of 42 U.S.C. § 1983.  (and official capacity)

---

[1]Child Protective Services
[2]Department of Social and Health Services
[3]Department of Social and Health Services

# III. INTRODUCTION

Plaintiff alleges the following: Defendants at all times relevant to this complaint, are working with the purpose of Section 42 USC 601 states the following:

(a)In general…..The purpose of this part is to increase the flexibility of States in operating a program designed to—(1)provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;(2)*end the dependence of needy parents on government benefits* by promoting job preparation, work*, and marriage*;(3)prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and(4)encourage the formation and maintenance of *two-parent families.*

This "Purpose" above is the reason Title IV-E, Title IV-D, and welfare were created, the 2 parent families mentioned in number (4) are "foster parents" since they are "formed" they did not exist before. *"End the dependence of needy families"* the US government does this by paying bonus incentives to social workers that remove children from single parents, that are on food stamps, and force those children into 2 parent families through adoption, and the Adoption and Safe Families Act of 1997. Title IV-D also pays bonus incentives to state officials by way of reckless child support enforcement. The US government is punishing single parents for being single and forcing poor children into Christian "married" families. This statute is non-positive and rebuttable.

RCW 13.34.110 states that a parent must sign and consent to "any" dependency order. A dependency order in Washington state can only be agreed, they are referred to as AGREED DEPENDENCY ORDERS. There is no such document filed that is *an unagreed dependency order*. The reason that CPS needs the parent's signature is because they do not have custody of the child, and that foster parent needs the bio parents' signature to take that child to the doctor and sign them up for school. CPS also needs the parent's signature to lawfully receive title IV-E funding.

These defendants and their employees and agents have been breaking the law under RCW 13.34.110 (c)(i)[4] Defendants have terminated the rights of thousands of parents by coercing that parent to sign the dependency order. The court cannot terminate any parents' rights *UNLESS they sign that dependency order,* or are in jail, commit a crime, or are missing. CPS is not a

---

[4]RCW 13.34.110(3)(c)(iv) (iv) The parent, guardian, or legal custodian knowingly and willingly stipulated and agreed to and signed the order or orders, without duress, and without misrepresentation or fraud by any other party.

protection agency they are an adoption agency, and the orphanage is the foster home. When a parent signs the order, they admit they abused their child so then the state obviously gets to keep their child in a foster home, why would anyone keep signing the dependency order if they did not believe they had to?

Defendant No.3 trains her attorney employees and agents to sign for these parents if the parent does not sign, and to convince these parents that they must comply with and agree to the order.

The Adoption and Safe Families Act of 1997 was constructed from 42 USC 601 Purpose, the Act (us law) targets children under the age of one to *fast track* for adoption. The AFCARS report proves the number one age removed is under 1, CPS does not remove children for child abuse.[5] Neglect is the number 1 reason for removal. Number 2 *"parental substance abuse"* which is also not child abuse, neglect in its most serious form should result in physical abuse. Physical abuse accounts for 12% of removals and sexual abuse 6%. This means Defendants violate the rights of parents more than 80% of the time. If HHS removes that report look here.[6]

The US government creates websites like americanadoptions.com (created 1 year prior to the Adoption and Safe Families Act of 1997) only the government is legally allowed to sell children for adoption or profit from adoption services, this site charges a $250 signup fee, but you can *only join if you are married,* remember their goal is 2 parent families. This website sells children directly out the womb and contains direct links to CPS offices as *"places to adopt"* nationwide. Claiming its much cheaper to "adopt from foster care."

Rooker-Feldman only applies to cases which have been decided in the state court, Plaintiffs case has not been decided and none of their court orders are valid, no shelter care hearing exists on the docket that is legal and heard.

*Any reference made to previous dependencies in which defendants were not employed are made to prove this is a custom unwritten widespread policy that all who are employed at these departments have always followed.*

_____

[5]https://www.acf.hhs.gov/sites/default/files/documents/cb/afcarsreport28.pdf
[6]https://1drv.ms/b/s!AmhsgRs52qWXrSvKXz_zM9Uqx4bz

# IV.   FACTUAL ALLEGATIONS

9.     On the Department of Public Defense King County website, it states the following:

*The Department of Public Defense (DPD) provides legal representation to adults and juveniles who have been charged with a crime and cannot afford an attorney, as well as people facing civil commitment, **parents who could lose their children in a dependency action**, and family … …*

This is what Defendant No.3 wants, parents to be afraid of CPS, so they can coerce these parents into signing their children away. No parent has to sign, free consent is a right all citizens have.

10.    Plaintiff alleges, at RossHunter.com the narrative is pro-African American, but his custom unwritten policy of only removing white infants at birth, and knowingly using African American supervisors to complete this task does not say he is pro-African American. Defendant No.1 intentionally abusing an oppressed population and using them as a tool to get his way, so that he and his boss can reap the benefits of it financially and objectively, is discrimination on top of discrimination.

11.    Defendant No.1 lacks jurisdiction of the fetus, but newborn babies are removed at a rate 4x higher than any other age. This website RossHunter.com goes on to obsess over teens becoming pregnant, and how he removes their newborns for adoptions:

*They describe lots of anecdotal reasons that might make it harder to adopt a newborn baby. It's heartbreaking that people who want to be parents and cannot struggle to find children to adopt. While I feel for these families, the world is probably a lot better off if fewer teens become pregnant in an unplanned way. -Author Ross Hunter[7]*

This should be a red flag, when the director of child welfare is concerned that there are not enough newborns to adopt. If that mother abused that newborn baby Plaintiff is pretty sure she would be in jail, CPS is kidnapping newborn babies illegally and intentionally keeping these children from their parents forcing them into adoption with complete strangers. Defendant No. 1 fully supports this. Plaintiff has been a victim of this unlawful behavior from his employees.

---

[7]https://1drv.ms/b/s!AmhsgRs52qWX5woUWpqT6RgCj3GV

12.   Upon information and belief, Defendants are in charge of these agents and therefore this complaint is about their unwritten custom policy being followed by their agents and employees, if Plaintiff had to sue each individual attorney, or social worker, there would not be enough time or room on this complaint to do that. ***Forcing parents to comply with dependency orders through coercion, and to sign these orders under duress***, is rightfully the Defendants unwritten policy and they have been in their position long enough to know what is happening.

13.   Plaintiff alleges that Defendants, each of them, and their agents and employees, and predecessors, conspired and still conspire together in each child dependency proceeding in King and Pierce Counties beginning in 2009, that are relevant to Plaintiff, and many of her children, also to other parents who are similarly situated as Plaintiff throughout those same counties, and possibly beyond.

14.   Plaintiff alleges Defendant No.1 has trained his state official employees to work with various public defenders employed under Defendant No.3.  Defendant No.2 defends Defendant No.1's social workers, but also works side by side with Defendant No.3 and makes decisions long before parents enter the court room, these Defendants and their agents and employees, rehearse their part together, they purport to be acting in their official duties when they informed and still inform Plaintiff ***that she has no choice but to sign dependency orders,*** that she must comply with Defendant No.1's employees demands, or that she will lose custody of her children to foster to adopt parents permanently.  Plaintiff believes Defendant No.3's employees and agents and she does sign the dependency orders from 2009-2015, for three of Plaintiffs children who are all placed in foster homes. Defendant No.3's agents also state that ***Plaintiff signing and agreeing*** to these orders ***would return her children much quicker***, because she trusts that what Defendant No.3's agents/employees are telling Plaintiff must be true since they have been in their position for quite some time, or were carrying out an official task, a ministerial duty, and being Plaintiffs attorney should be on the side of Plaintiff, and not on the other side. Plaintiff signs under duress.

15.   Beginning in 2009-present, Defendants No.1 and No.3's agents verbally assured Plaintiff that ***"this happens to many parents, and nobody gets their kids back right away, even if they did not abuse their children,"*** even if the social worker lies, even if the children's father was making revenge calls to Central Intake. Defendants' employees stated that ***none of that mattered***, Plaintiff was required to do what Defendant No.1's employees told Plaintiff to do. Even if over

time Plaintiff already did what they asked of her, and had the proof, even if what was being

asked of her had nothing to do with the reason her children were removed. Defendants and all of

their agents always stated then and now that ***Plaintiff will have her rights terminated if she did***

***not sign and agree to the dependency orders.***

16.     Plaintiff alleges, from 2009-present if Plaintiff knew she had a choice to sign, she would

have never signed. If Plaintiff knew she were allowed to appeal, she would have appealed every

single court hearing. Nobody ever told her she could appeal, and nobody ever told her she had a

choice. The Defendants employees and agents took advantage of a traumatized parent as they do

100% of the time after removing an unabused child.

17.     Upon information and belief,  from 2009-2022 that is about 20 court orders, Defendant

No.2's employees who worked dependencies relevant to Plaintiff used and still use the following

statute in their dependency petitions and court orders:

> ***RCW 26.44.020(6)(c)*** *There is no parent capable of meeting the child's needs*
> *such that the child is in circumstances that constitute a serious danger to the*
> *child's development;*

This statute does mean that Plaintiff is not there, because that is what it says. Plaintiff was

always right there, in the court room, or on Zoom, she never left. She is and was the parent and

sole custodian of her child and was always right there. This statute was likely meant for

incarcerated parents. When Defendant No.3's agents apply this statute each time the AAG

commits an abuse of process:

> *The essential elements of **abuse of process**, as the tort has developed, have been stated to*
> *be: first, an ulterior purpose, and second, a willful act in the use of tne process not*
> *proper in the regular conduct of the proceeding.[8]*

The ulterior motive is filing for federal funding, this is why Defendant No.2 hides the

termination petition inside the dependency order in a small sentence under Plaintiffs signature

line, then the judge can start filing for bonus federal funding. The other 2 options under the

statute 26.44.020(6) are that Plaintiff abused, neglected or abandoned her child and Defendant

No.2's employees and agents have never marked any of these options. This means the removal

---

[8]28 Wn. App. 737, BATTEN v. ABRAMS - WA State Supreme ...

was unconstitutional since the requirement to remove a child according to the US constitution is that there be tangible proof the child was abused or neglected, or abandoned, this was not marked.

18.       On or about March 16th, 2020, Plaintiffs child was unlawfully removed from her custody and Plaintiff decided she was not going to sign anymore or comply, after losing one child to complete strangers for the adoption incentive bonus in 2014, paid out to Defendant No.1's fosters, and Defendant No.2's and No.3's employees via Title IV-E. Plaintiff refused to sign anything for Defendants employees from the first day of her then 5-year-old child's removal. The past 4 review hearings court orders have not been filed to the official docket since Plaintiff accused the court officials of filing and upholding unsigned orders.

19.       Upon information and belief Plaintiff has never completed a single court ordered service since her 5-year-old was removed, she has always refused to comply, always refused to sign, and always fired every single one of Plaintiffs state paid attorneys employed by Defendant No.3 since each one of them kept lying to Plaintiff about the written law. Defendant No.2's assistant attorneys have many times, completely removed the Plaintiffs signature line from all court orders so as not to file an unsigned order.

20.       Beginning in March 2020 until present each one of Defendant No.1's employees, kept telling Plaintiff she has no choice and must do what Defendant No.1's employees tell her to do. Plaintiff has more than 15 letters which are sent to her monthly from Defendant No.1's social workers. These letters tell Plaintiff what she needs to do to get her child back, and if she does not do it, her parental rights to her child will be terminated. What is the definition of coercion? ***The practice of persuading someone to do something by using force or threats.*** These social workers know Plaintiff is only required to do these services ***is if she signed and agreed to the order*** she never has, that is what it says in the written law:

> RCW 13.34.110 states (i) The parent, guardian, or legal custodian understands the terms of the order or orders ***he or she has signed***, including his or her responsibility ***to participate in remedial services*** as provided in any disposition order.

By telling Plaintiff that if she does not sign her rights will be terminated. Truth is and has always been if she ***does sign her rights will be terminated***. There is only Termination RCW, no Reunification RCW. This constitutes "fraud" and misrepresentation.

21.     Plaintiff has not had her termination trial and it has been 26 months RCW says that Defendants employees should be done and complete with any child "dependency" case in 9-12 months. Plaintiff endured a 6-year dependency from 2009-2015.

22.     Defendants' employees broke the law in each of Plaintiffs dependency's, by unlawfully and illegally filing for, and receiving payments through title IV-E which is governed by public US law and the Adoption and Safe Families Act of 1997:

      a.   No judicial determination: 42 USC 672(a)(1).

      b.   No reasonable efforts to prevent removal: §472(a)(2)(A) 45 CFR §§1356.21(b)(c)

      c.   No probable cause: 42 USC 672(a)

      d.   No case plan ***created with parent***: 45 CFR 1356.21(g)

23.     Upon information and belief, Plaintiff has never agreed to any plan regarding her child in King County courts since 2015, Defendant No.1 and his employees and agents violated and continue to violate their own child welfare policy:

    *1130 Safety Plan: A **safety plan is a written agreement** between **a family and the Department of Children, Youth, and Families (DCYF)** that identifies how safety threats to children or youth will be immediately controlled and managed in the home.*

24.     On or about October 28th, 2021, The Supreme Court of Washington state ordered that Plaintiff must do a dependency. Plaintiff has not been arrested yet for non-compliance with this court order. ***Where in RCW does it say that the government can force parents to sign and comply with CPS?***

25.     Plaintiff alleges she has not signed or agreed to any dependency court order, or case plan, or safety plan, these 3 Defendants have instructed their employees and agents to withhold Plaintiff's child and have assisted in this illegal harboring of Plaintiffs minor child, lacking the legal requirements to do so under RCW 13.34.110.

26.     Plaintiff has countless emails to and from many attorneys, who were trained and instructed by Defendant No.3, and social workers, who were trained and instructed by Defendant No.1 to deny their crimes committed, and to ignore Plaintiff when she protests their crimes. If a dependency court order is not a legally binding contract, then Defendants employees would not have the power to terminate a parent's rights when they do not follow the court orders. RCW 13.34.110 does not provide an alternative for a reason, because there is no alternative the PARENT MUST SIGN AND AGREE.

# V.   INJURIES

29.     Plaintiff realleges, repleads, and incorporates by reference the allegations contained in paragraphs 1 through 42 as though fully set forth here, including the introduction and any other information above. The Defendants while performing public functions using federal funding and government grants, acted under color of state law and without lawful justification, intentionally, maliciously, and with deliberate indifference and reckless disregard for the natural consequences of their acts, caused injury and damage in violation of Plaintiffs constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including the Fourteenth Amendment, Due Process Clause, and Equal Protection Clause. The Defendants, each of them, following widespread policies, unwritten customs, and usages were a direct and proximate cause of the conduct alleged in this complaint and otherwise a direct and proximate cause of the harm to Plaintiff, in violation of Plaintiffs federally protected civil rights, including but not limited to her rights to familial association, equal protection, intimate association without retaliation, substantive and procedural due process. Plaintiff was injured emotionally, mentally, financially, & these injuries are  permanent. Plaintiff has endured, and will continue to endure mental health treatment, costs, and time, an inconvenience to Plaintiff.  Plaintiff's injuries have caused and will continue to cause new mental health diagnosis, new mental health medication management. Plaintiff suffered and continues to suffer from emotional harm, from public and private humiliation, loss of friends, loss of family bonds with her biological family.

The acts and omissions of the Defendants set forth above have deprived Plaintiff her liberty without due process of law in contravention of the Fourteenth Amendment of the United States Constitution as a result of the failure of the Defendants to follow the law, and not gaining Plaintiffs signature under duress, or attempting to say that they do not need her signature and continue without her signature.

# VI.   PRAYER FOR RELIEF

Wherefore the Plaintiff prays for judgement against each and every defendant, jointly and severally as follows:

30.     Plaintiff is asking for at trial, $0.00 in cash damages.

31.  Enter a Temporary Restraining Order pursuant to Rule 65(b), Federal Rules of Civil Procedure, restraining the defendants, their successors in office, agents and employees, and all other persons in active concert and participation with them from:

    a.  Committing an abuse of process by intentionally misapplying RCW that is not relevant. RCW 26.44.020(6)(c)

    b.  Using coercion and duress to get parents to sign dependency orders.

    c.  Harboring children they do not gave custody of, whose parents never signed or consented to a dependency order, case plan, safety plan, or foster placement.

    d.  From illegally forcing title IV-E federal funding under The Adoption and Safe Families Act of 1997,

        i.  By not having this judicial determination,

        ii.  Not having probable cause, or exigent circumstances.

        iii.  Not having a pre or post deprivation hearing on time.

        iv.  Not making reasonable efforts to prevent removing children.

        v.  Not having the parent's signature and consent. RCW 13.34.110

32.  Enter preliminary and permanent injunctions pursuant to Rule 65, Federal Rules of Civil Procedure, enjoining defendants, their successors in office, agents, and employees and all persons in active concert and participation with them:

    a.  Committing an abuse of process by intentionally misapplying RCW that is not relevant. RCW 26.44.020(6)(c)

    b.  Using coercion and duress to get parents to sign dependency orders.

    c.  Harboring children whose parents never signed or consented to a dependency order, case plan, safety plan, or foster placement.

    d.  From illegally forcing title IV-E federal funding under The Adoption and Safe Families Act of 1997,

        i.  By not having this judicial determination,

        ii.  Not having probable cause, or exigent circumstances.

        iii.  Not having a pre or post deprivation hearing on time.

        iv.  Not making reasonable efforts to prevent removing children.

        v.  Not having the parent's signature and consent. RCW 13.34.110

33.     Enter a final judgement declaring defendants' actions as set forth in this complaint to be invalid as a violation of the Adoption and Safe Families Act of 1997, and a violation of Plaintiffs rights to Equal Protection and Substantive Due Process, under the Fourteenth Amendment of the US Constitution, the regulations and instructions promulgated thereunder, and violation of Plaintiffs due process by violating various state laws of the state of Washington.

34. In the pro se handbook it says Plaintiff does not have to talk like a lawyer, so please do not treat her like a lawyer.

35. The custom policies each of the defendants are following were created and promulgated by their employers DCYF, Department of Public Defense, and Washington state Attorney Generals Office. These policies are unconstitutional, criminal, and discriminatory. Nowhere in RCW does it permit the defendants and their employees to keep children from parents who refused to sign the Dependency Order, if a parent refuses to comply there is no dependency, there can't be without the parents compliance. They should be required to terminate right away and not permitted to forcing parents to comply. None of these Defendants or their employees can force a parent to agree to something they do not agree to and count on their desperation for their children to benefit foster parents who at all times knowingly harbor unabused children to force unnatural bonds.

36. On information and belief, the Defendants carryout policy that targets children for adoption based on the parents marital status and that is discrimination, they know and see it is discrimination, but still carry out the unconstitutional policies, this constitutes a deliberate indifference to the federally protected civil rights of Plaintiff, and other parents similarly situated, who have been a direct victim of this discrimination, at all times relevant to this complaint.

37. On information and belief, the Defendants carryout policy that targets children for adoption based on the child's age and that is discrimination, they know and see it is discrimination, but still carry out the unconstitutional policies, this constitutes a deliberate indifference to the federally protected civil rights of Plaintiff, and other parents similarly situated, who have been a direct victim of this discrimination.

38. On information and belief, the Defendants carryout policy that targets children for adoption based on the parents income and that is discrimination, they know and see it is discrimination, but still carry out the unconstitutional policies, this constitutes a deliberate indifference to the federally protected civil rights of Plaintiff, and other parents similarly situated, who have been a direct victim of this discrimination.

39. On information and belief, the US government can only discriminate if their is a valid purpose to this discrimination, removing children for reasons that are not child abuse and forcing them into adoption, to "promote marriage" are not good reasons to discriminate. State officials who work for and the Defendants themselves are required to follow the Equal Protection Clause which is incorporated against the states through the Due Process Clause of the Fourteenth Amendment, when Defendants discriminate and allow their employees to discriminate they have and still are violating Plaintiffs right to Equal Protection under the law, as well as those similarly situated as Plaintiff.

H.R.867—10       SEC. 473A. ADOPTION INCENTIVE PAYMENTS.

..................

(1) may support the goal of encouraging more adoptions out of the foster care system, when adoptions promote the best interests of children, and may include the following:

"(A) The development of best practice guidelines for expediting termination of parental rights.

"(C) The development of specialized units and expertise in moving children toward adoption as a permanency goal.

**_"(E) Models to encourage the fast tracking of children who have not attained 1 year of age into pre-adoptive placements._**

40. This would be a great idea if children were removed because they were abused but 84% are not ever abused or neglected and only removed based on a "What if they are abused in the future?" analogy created by the Defendant No.1 and Defendant No.2's employees. This is what foster parents prefer children that were not abused.

41. This is defined under **_RCW 26.44.020 (6)(d) The child is otherwise at imminent risk of harm._** An unconstitutional RCW Defendant No.1 teaches his employees so they can make up any reason they want to remove children. Plaintiff moves this court to strike this RCW 26.44.020(6) (d) as a statute that has violated her constitutional rights, and the rights of thousands of parents in the state of Washington. Plaintiff knows these parents personally and can prove this statute is of no use to the public. All children in the world are at imminent risk of harm.

42. Plaintiff gave plenty of notice to so many of the Defendants employees, via email, the Ombudsman, Commission of Judicial Conduct, the Washington Bar Association, protesting their crimes against herself and her child to be ignored. The Defendants were also given notice via 6 previously filed complaints from Plaintiff.
AMENDED 05/20/22

## ONLY THE CHILDREN BELOW ARE ELIGIBLE FOR BONUS FUNDING

Childs' parents must be on welfare. See § 472(a)(3)(B) of the Act.
Childs' parent must be single. §§ 472(a)(1) and (3) of the Act; Regulatory Citation: 45 CFR §§ 233.20, 233.90 and 1356.21(k) & (l)]
Foster home must be "licensed"(married and Christian)§§ 472(b) & (c) of the Act; Regulatory Citation: 45 CFR §§ 1355.20 and 1356.71(d)(1)(iv)]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.    CERTIFICATION AND CLOSING**

*Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.*

A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

*My name is Myriam Zayas* <u>*I am above the age of 18.*</u> *I certify and declare, under penalty of perjury, that everything stated herein, is the truth to the best of my knowledge. This court is governed by the laws of the state of Washington in the United States. Today's date is May 9th , 2022.*

**Date of signing:**    05/08/2022

**Pro Se Plaintiff Signature:** *Myriam Zayas*
**Printed Name and email:** _____
                                        /s/Myriam Zayas

